# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CAROL SIERZEGA,

    Plaintiff(s),

v.

COUNTRY PREFERRED INS. CO., et al.,

    Defendant(s).

2:13-CV-1267 JCM (NJK)

# ORDER

Presently before the court is defendant Country Preferred Insurance Company's motion for summary judgment. (Doc. # 21). Plaintiff Carol Sierzega filed a response in opposition (doc. # 24), and defendant filed a reply (doc. # 29).

Also before the court are plaintiff's motions for partial summary judgment. (Docs. ## 25 & 32). Defendant filed responses in opposition (docs. ## 30 & 35), and plaintiff filed replies (docs. ## 31 & 36).

**I.  Background**

The instant action centers upon an insurance dispute between plaintiff Carol Sierzega and her automotive insurer, defendant Country Preferred Insurance Company.

On September 1, 2009, plaintiff was the victim of a T-bone car crash occurring at a fast food drive through in Las Vegas, Nevada. The driver of the other car was Shirleen Okelberry, who was insured by Allstate Insurance Company. At that time, plaintiff held a policy with defendant providing

**James C. Mahan**
**U.S. District Judge**

up to $50,000.00 of underinsured motorist coverage. Immediately after the accident, plaintiff stated that she suffered only a bruised left elbow and did not intend to seek medical treatment. (Doc. # 21-2). On September 9, 2009, plaintiff reported to defendant that she was experiencing neck and back spasms, and had been referred to a chiropractor. (Doc. # 21-4).

An inter-company arbitration between defendant and Allstate resulted in a finding that Ms. Okelberry was at fault for the accident. (*See* doc. # 21-12). On March 5, 2010, plaintiff's counsel faxed a letter to defendant which stated, "My client is willing to settle for the policy limits provided that you have the same in my office within two weeks together with proof that those are the only policy limits available to provide compensation to my client for this incident." (Doc. # 21-13). Attached to the letter was an authorization for disclosure of protected health information as well as a list of health providers that were treating plaintiff's alleged injuries. *Id.*

On March 11, 2010, defendant acknowledged receipt of the letter and told plaintiff's counsel that it did not have enough information with which to make a settlement offer. (Doc. # 21-16). On May 13, 2010, defendant sent plaintiff's counsel a letter stating that defendant had received medical records from only two of plaintiff's medical providers. (Doc. # 21-20). The letter also conveyed that defendant could not make a settlement offer unless it received information as to Ms. Okelberry's policy limits with Allstate. *Id.*

On September 29, 2010, plaintiff provided Ms. Okelberry's Allstate policy information to defendant, including a statement that the policy limited bodily injury liability to $50,000 per person. (Doc. # 21-23). Defendant responded on October 4, 2010, that it still needed documentation conveying the amount of plaintiff's medical expenses. (Doc. # 21-24). Defendant's records indicate that it had confirmed only $22,000 in medical costs at that time. *Id.* On October 15, 2010, defendant made an offer of $10,000 to settle the disputed portion of the claim and again requested that plaintiff's counsel forward all medical records. *Id.* Plaintiff declined this offer, and countered with an offer to settle the claim for the policy limit. (Doc. # 21-27).

On August 25, 2011, while still undergoing treatment for her alleged injuries, plaintiff filed suit against Ms. Okelberry in Nevada state court. (Doc. # 24-1 p. 78). Defendant was not joined as

1 a party to this suit. While the state court action was proceeding, defendant continued to request that plaintiff and her healthcare providers send documentation indicating the degree to which plaintiff's medical costs exceeded the limits of Ms. Okelberry's Allstate policy. (Doc. # 21-28). On September 7, 2012, the state court issued a judgment in plaintiff's favor against Ms. Okelberry in the amount of $4,040,555.39. (Doc. # 24-1 p. 3).

On September 18, 2012, defendant sent a final letter to plaintiff indicating that, after numerous requests, it still had not received billing records from five of plaintiff's medical providers. (Doc. # 21-29). At that time, defendant stated that it would proceed in analyzing the claim without the missing records. *Id.* On September 27, 2012, defendant agreed to tender the $50,000 policy limit to plaintiff. (Doc. # 21-30) Defendant issued a check to plaintiff in the amount of $50,000 on October 4, 2012. (Doc. # 21-31).

The instant case was filed in Nevada state court on April 25, 2013. Defendant removed the case to this court on July 18, 2013, citing this court's diversity jurisdiction pursuant to 28 U.S.C. section 1332. Defendant now asserts that plaintiff has failed to provide sufficient evidentiary support for the claims in her complaint, and argues that it is entitled to summary judgment in this matter.

## II.    Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

1  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To demonstrate the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Analysis

In her complaint, plaintiff alleges that defendant (a) breached the insurance contract, (b) breached the covenant of good faith and fair dealing, and (c) committed negligence by refusing to pay the policy limit sooner. Defendant argues that it should be granted summary judgment as to all of these claims. The court will address each of plaintiff's claims in turn.

*a. Breach of Contract*

In her complaint, plaintiff alleges that defendant breached the insurance contract by refusing to tender the policy limit prior to September 27, 2012. However, plaintiff cites no particular provision of the contract that was breached by defendant's actions. Furthermore, plaintiff's account illustrates that defendant fulfilled the express terms of the contract by paying the full policy limit shortly after a judgment was rendered in the state court action. Therefore, because plaintiff provides no evidence that defendant violated an express term of the contract, the court will grant defendant's summary judgment motion as to this claim.

*b. Breach of the Covenant of Good Faith and Fair Dealing*

Even without a violation of the express terms of a contract, a party can be liable for violating the implied covenant of good faith and fair dealing when it "deliberately contravenes the intention and spirit of the contract." *Morris v. Bank of Am. Nevada*, 886 P.2d 454, 457 (Nev. 1994) (citing *Hilton Hotels v. Butch Lewis Productions*, 808 P.2d 919, 922–23 (Nev. 1991)). This implied covenant is implicitly built into every contract, and requires that parties "act in a manner that is faithful to the purpose of the contract and the justified expectations of the other party." *Morris*, 886 P.2d at 457 (internal quotation marks omitted).

An insurance company violates the covenant of good faith and fair dealing when it denies or delays payment on a valid claim "with knowledge that there is no reasonable basis for its conduct." *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). Therefore, in order for this claim to withstand summary judgment, plaintiff must present evidence from which a reasonable person could conclude that (1) there was no reasonable basis for defendant's refusal to pay the policy

limit prior to September 27, 2012 and (2) defendant *knew* that there was no reasonable basis for this action.

Courts in this district have previously held that an insurance company's refusal to accept a policy-limit settlement offer within an arbitrary time span designated by a plaintiff does not necessarily constitute bad faith. *Hicks v. Dairyland Ins. Co.*, 2010 WL 2541175, *9 (D. Nev. 2010) *aff'd*, 441 F. App'x 463 (9th Cir. 2011); *AAA Nevada Ins. Co. v. Vinh Chau*, 808 F. Supp. 2d 1282, 1287 (D. Nev. 2010) *aff'd in part, dismissed in part on other grounds sub nom. AAA Nevada Ins. Co. v. Chau*, 463 F. App'x 627 (9th Cir. 2011).

Both *Hicks* and *Chau* involved circumstances in which, shortly after an accident, a letter was sent to an insurance company offering to settle all claims for the policy limit. In both of these cases, as in the instant case, the letter stated that the offer would remain open for two weeks, yet included no records or documentation from which the insurance company could assess the value of the victim's claim. The *Hicks* and *Chau* courts concluded that the insurance company's subsequent refusal to tender the policy limit within two weeks did not constitute bad faith, as the lack of documentation regarding the victim's injuries constituted a reasonable basis to deny the claim. *See Hicks*, 2010 WL 2541175, at *9; *Chau*, 808 F. Supp. 2d at 1287.

Similarly, in this case, plaintiff's initial letter offering to settle her claim for the policy limits contained no documentation detailing her injuries or her expected medical bills. While plaintiff did authorize defendant to obtain records from her medical providers, defendant repeatedly sent notices to plaintiff stating that some of the providers were not responding to its requests. Indeed, plaintiff even failed to inform defendant of Ms. Okelberry's coverage limits until seven months after sending the policy-limit offer. This information was essential to defendant's assessment of the value of the claim, as plaintiff's underinsured motorist policy was designed to render defendant liable only for plaintiff's damages in excess of the tortfeasor's policy limits.

Plaintiff's failure to provide adequate information did not end when she finally communicated Ms. Okelberry's Allstate policy limits to defendant. Even after she obtained a judgment in the state court action, defendant still had not received records from five of plaintiff's

1  medical providers. As a result, defendant was forced to make its final assessment based on an
2  incomplete record of plaintiff's treatment. Even so, defendant tendered plaintiff the policy limit less
3  than two weeks after the judgment was issued in the state court action.

4        The court finds that plaintiff has not met her burden to raise a genuine issue of material fact
5  as to this claim. Given the lack of information available to defendant regarding plaintiff's medical
6  costs, its refusal to pay the policy limit prior to the judgment in the state court action was reasonable.
7  Furthermore, plaintiff presents no evidence demonstrating that defendant *ever* received records
8  conveying the extent to which her medical costs exceeded the limits of Ms. Okelberry's Allstate
9  policy.[1] Therefore, even if defendant's refusal had been unreasonable, plaintiff provides no evidence
10 demonstrating that defendant *knew* its actions were unreasonable. Accordingly, the court will grant
11 defendant's motion for summary judgment as to this claim.

12     *c. Negligence*

13       In her final claim, plaintiff asserts that defendant acted negligently by delaying its payment
14 of the policy limit. However, plaintiff cites no law indicating that Nevada recognizes a negligence
15 cause of action against an insurer based on a denial or delay of payment for a valid claim. Indeed,
16 the fact that Nevada recognizes a cause of action for breach of the covenant of good faith in this
17 context belies the existence of a parallel claim for negligence. If a plaintiff could succeed against an
18 insurer under a theory of ordinary negligence, it would be absurd for courts to impose a stricter
19 standard for identical claims arising under the covenant of good faith.

20       Therefore, the court adopts the conclusion of the California Court of Appeal when it held,
21 "[A]n insured can recover in tort against an insurer for the improper handling of a claim only upon
22 a showing that the insurer acted in bad faith . . . such a showing requires something more than simple
23 negligence."*Adelman v. Associated Int'l Ins. Co.*, 108 Cal. Rptr. 2d 788, 790 (Cal. Ct. App. 2001).
24 Thus, because Nevada does not recognize a negligence cause of action against an insurer who has

---

[1] Strangely, plaintiff points to records indicating that on October 13, 2010, defendant believed that plaintiff's medical bills totaled only $36,697. (Doc. # 36 p. 79). Given this information, it is completely reasonable that defendant would refuse plaintiff's policy-limit offer, as this value is well below the $50,000 limit of Ms. Okelberry's Allstate policy.

James C. Mahan
U.S. District Judge

- 7 -

1 wrongfully denied or delayed payment, the court will grant defendant's motion as to this claim.

2 Accordingly,

3 IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Country Preferred Insurance Company's motion for summary judgment (doc. # 21) be, and at the same time hereby is, GRANTED.

6 IT IS FURTHER ORDERED that plaintiff Carol Sierzega's motions for partial summary judgment (docs. ## 25 & 32) are DENIED. The clerk shall enter judgment accordingly and close the case.

9 DATED April 25, 2014.

*[signature: James C. Mahan]*
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -